UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALFRED JOHN SHEFFIELD,

               Petitioner,

                                     CASE NO. 14-10824

v.                                HONORABLE ARTHUR J. TARNOW

LORI GIDLEY,

               Respondent.

_____/

**OPINION AND ORDER**
**DENYING THE HABEAS CORPUS PETITION,**
**DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, BUT**
**GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

This matter has come before the Court on petitioner Alfred John Sheffield's *pro se*

petition for the writ of habeas corpus under 28 U.S.C. § 2254. Petitioner challenges his

Wayne County, Michigan conviction for second-degree murder, Mich. Comp. Laws

§750.317. Petitioner asserts that the evidence at trial was insufficient, that his sentence

was based on inaccurate information, that the prosecutor committed misconduct during

closing arguments, and that his trial and appellate attorneys were ineffective. Petitioner

also claims to have newly-discovered evidence that his young co-defendant, Arthur

Murray ("Murray"), fabricated evidence against him. Respondent Lori Gidley urges the

Court to deny the habeas petition on grounds that Petitioner's claims are meritless, are

not cognizable on habeas review, are barred by the doctrine of procedural default, or were

waived.  The Court agrees that Petitioner's claims do not warrant habeas relief.

Accordingly, the petition will be denied.

# I.  Background

Petitioner was tried before a jury in Wayne County Circuit Court where the

evidence established that,

> [o]n July 20, 2009, while walking his dog in an alley between Sturdevant
> and Highland Streets in Highland Park, Michigan, Robert Wilson noticed a
> body.  Wilson immediately notified the police, who arrived at the scene and
> identified the victim as Mary McCullum.  McCullum was found in some
> tall grass with her pants unbuttoned and unzipped.  According to officers on
> the scene, judging from the tracks formed in the tall grass, her body had
> been dragged to the location where she was found.  As police worked the
> case, they eventually were told of two possible suspects, "Al" and "Ace."[1]
> Following a lead that defendant owned a van which matched a description
> given by an anonymous source, defendant voluntarily appeared at the
> Highland Park Police Station for an interview.  After initially telling
> detectives that he did not know the victim or anyone named Ace, he
> subsequently changed his story and told police that on July 20, 2009, at
> around 1:30 a.m., he drove Ace to a gas station where they met the victim.
> Ace then propositioned the victim for sex.  According to defendant's
> statement, he drove Ace and the victim to a location where they could "take
> care of business."  After defendant left his van, he noted that people were
> coming up and buying drugs from Ace, and eventually defendant asked Ace
> if he was finished, and Ace responded that he thought the victim had stolen
> money from him.  According to defendant, he suggested that Ace search the
> victim.  Defendant also stated that he drove Ace and the victim to another
> location.  It was at this location, an alley between Highland and Sturdevant,
> that defendant stopped the van and Ace dragged the victim out of the van
> and beat her.  According to defendant's statement, when he confronted Ace,
> Ace threatened to kill defendant.  On August 14, 2009, Murray was arrested
> and charged in the killing of Mary McCullum.
>
> On August 19, 2009, police arrested defendant and impounded his van.  A
> second interview of defendant was conducted.  Although in the first

---

[1] "Ace" was later identified as Arthur Henry Murray.  Murray pled guilty to second-degree murder and was sentenced to 12 to 20 years' imprisonment on February 16, 2010.

statement defendant had asserted that he left Ace and the victim in the alley, to be flagged down by Ace at a different location, in his second statement, defendant told police that he observed Ace stomp on the victim's head, drag her to a nearby fence and hit her with a brick.  He also told police that Ace may have used a knife from defendant's van to stab the victim.  Defendant told police that following the killing of the victim, Ace requested to be driven home and defendant complied.

*People v. Sheffield*, No. 296780, 2011 WL 2623383, at *1 (Mich. Ct. App. July 5, 2011) (footnote in original).

The victim was five feet tall and 106 pounds.  Her body was found in a deserted area near vacant houses.  She had been stabbed fourteen times in the chest and had facial and skull fractures consistent with blunt force injury.  Seminal fluid on her jacket and biological material found under her fingernails matched Murray's DNA.  There was no forensic evidence linking Petitioner to the crime.

The prosecutor's theory was that Petitioner aided and abetted Murray in killing the victim.  Petitioner did not testify or present any witnesses.  His defense was that Murray was to blame for the victim's death and that there was no connection between him and the harm done to the victim.

On January 27, 2010, the jury found Petitioner guilty, as charged, of second-degree murder.  On February 16, 2010, the trial court sentenced Petitioner as a habitual offender, fourth offense, to imprisonment for forty to sixty years with credit for 189 days.  Petitioner was almost fifty years old at the time.

On direct appeal, Petitioner argued through counsel that the evidence at trial was insufficient to convict him.  In a *pro se* supplemental brief, Petitioner raised the same claim, as well as, claims about trial counsel and appellate counsel.  The Michigan Court

3

of Appeals affirmed Petitioner's conviction and sentence, *see id*., and on December 28, 2011, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Sheffield*, 490 Mich. 971; 806 N.W.2d 331 (2011).

Petitioner subsequently filed a motion for relief from judgment in which he alleged that his sentence was based on inaccurate information, that he was entitled to a new trial due to newly-discovered evidence, that he was deprived of effective assistance of trial counsel at the preliminary examination, and that appellate counsel was ineffective for failing to raise meritorious issues. The trial court denied Petitioner's motion, and the Michigan Court of Appeals denied leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Sheffield*, No. 312846 (Mich. Ct. App. June 5, 2013). On February 5, 2014, the Michigan Supreme Court denied leave to appeal for the same reason. *See People v. Sheffield*, 495 Mich. 939; 843 N.W.2d 211 (2014).

On February 21, 2014, Petitioner filed his habeas corpus petition. He asserts the following claims as grounds for relief: (1) the prosecution failed to provide sufficient evidence to satisfy the reasonable-doubt standard of proof; (2) his sentence was based on inaccurate information; (3) the prosecutor violated his rights to a fair trial and due process of law during closing arguments; (4) he is entitled to a new trial on the basis of newly-discovered evidence that Murray fabricated evidence against him; (5) he was denied effective assistance of trial counsel by counsel's failure to challenge the prosecutor's case; (6) he was denied effective assistance of appellate counsel on direct review; and (7) there was insubstantial evidence linking him to the murder. Respondent argues in an

4

answer to the habeas petition that some of Petitioner's claims are procedurally defaulted, either because Petitioner did not exhaust state remedies for the claims and no longer has an available remedy, or because Petitioner raised the claims for the first time on state collateral review.

A procedural default is not a jurisdictional matter, *Trest v. Cain*, 522 U.S.87, 89 (1997), and an analysis of whether Petitioner's claims are procedurally defaulted "adds nothing but complexity to the case." *Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010). The Court therefore proceeds directly to the merits of Petitioner's claims, using the following standard of review.

## II.  Standard of Review

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011). Pursuant to § 2254, the court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for Part II).

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id*. at 411.  "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)."  *Renico v. Lett*, 559 U.S. 766, 773 (2010).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his claims "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id*. at 103.

### III.  Analysis

**A.  Sufficiency of the Evidence**

Petitioner's first and seventh claims allege that the prosecutor failed to produce sufficient evidence to support Petitioner's conviction.  Petitioner points out that there was no forensic evidence linking him to the murder and that the prosecutor failed to establish a motive for him to commit the crime.  Petitioner also contends that there was no evidence that he supported, encouraged, or incited the commission of the crime and that, at most, he was merely present when Murray beat and stabbed the victim.  The Michigan Court of Appeals adjudicated Petitioner's claim on direct review and concluded that sufficient evidence existed to support Petitioner's conviction.

**1.  Clearly Established Federal Law**

The relevant question on review of the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  The Supreme Court has made clear that

> *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference.  First, on direct appeal, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial.  A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury."  *Cavazos v. Smith*, 565 U.S. 1, ——, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) (*per curiam*).  And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.  The federal court instead may do so only if the state court decision was

'objectively unreasonable.' " *Ibid*. (quoting *Renico v. Lett*, 559 U.S. 766, ——,
130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)).

*Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012) (*per curiam*).

The *Jackson* standard "must be applied with explicit reference to the substantive

elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16.

In Michigan,

> [t]he elements of second-degree murder are: (1) a death, (2) caused by an
> act of the defendant, (3) with malice, and (4) without justification or
> excuse. *People v. Bailey*, 451 Mich. 657, 669, 549 N.W.2d 325 (1996).

> Malice is defined as the intent to kill, the intent to cause great bodily harm,
> or the intent to do an act in wanton and wilful disregard of the likelihood
> that the natural tendency of such behavior is to cause death or great bodily
> harm. *People v. Aaron*, 409 Mich. 672, 728, 299 N.W.2d 304 (1980).

*People v. Goecke*, 457 Mich. 442, 463-64; 579 N.W.2d 868, 878 (1998).

> "Aiding and abetting" describes all forms of assistance rendered to the
> perpetrator of a crime and comprehends all words or deeds that might
> support, encourage, or incite the commission of a crime. . . .  To support a
> finding that a defendant aided and abetted a crime, the prosecutor must
> show that (1) the crime charged was committed by the defendant or some
> other person, (2) the defendant performed acts or gave encouragement that
> assisted the commission of the crime, and (3) the defendant intended the
> commission of the crime or had knowledge that the principal intended its
> commission at the time he gave aid and encouragement.  An aider and
> abettor's state of mind may be inferred from all the facts and circumstances.
> Factors that may be considered include a close association between the
> defendant and the principal, the defendant's participation in the planning or
> execution of the crime, and evidence of flight after the crime.

*People v. Carines*, 460 Mich. 750, 757-58; 597 N.W.2d 130, 135 (Mich. 1999) (quoting

*People v. Turner*, 213 Mich. App. 558, 568-69; 540 N.W.2d 728, 733-34 (Mich. Ct. App.

1995)).

### 2. Application

A death obviously occurred, and Petitioner does not deny that Murray caused the victim's death or that there was no justification for the death. Instead, Petitioner argues that he was merely present when Murray beat and stabbed the victim and that he did not assist Murray, nor know what Murray intended to do.

The Michigan Court of Appeals determined that Petitioner's involvement in the crime amounted to more than "mere presence." The Court of Appeals pointed out that,

> [a]ccording to defendant's own statement, he allowed Ace (Murray) and the victim to have sex and use drugs in his van. At some point, Murray became angry and accused the victim of stealing his money. Murray asked defendant what to do, and defendant encouraged Murray to assault the victim. Subsequently, defendant drove his van to a dark and secluded alley where Murray beat and stabbed the victim to death in the middle of the night. Defendant also acknowledged that the knife used by Murray came from his van. Defendant waited while Murray stabbed the victim and disposed of the knife. Defendant then drove Murray away from the crime scene.

*Sheffield*, 2011 WL 2623383, at *2. According to the Court of Appeals, a reasonable jury could have concluded from this evidence that Petitioner aided and abetted Murray by: encouraging Murray to assault the victim when he told Murray to search her for the missing money; driving Murray and the victim to a dark and secluded alley; providing Murray with a knife that was in his van; and waiting for Murray and subsequently driving him away from the crime scene. *Id*. at *3.

Petitioner's conduct, as described above, amounted to a form of assistance. As for the element of intent, the officer in charge of the case testified at trial that he thought

Petitioner knew or had reason to know Murray intended to harm the victim.  When asked to explain the basis for this conclusion, the officer said:

> At the point where the money was missing and Mr. Sheffield said in his statement that you should search her, and after the money wasn't found, Mr. Murray, who basically had [the victim] as a captive, said you need to take her somewhere and he began to drive.

(Trial Tr. Vol. II at 127, Jan. 27, 2010.)

Petitioner also admitted to the police that Murray may have gotten a knife out of Petitioner's van and that he (Petitioner) had heard the victim plead with Murray not to stab her anymore.  (*Id*. at 141-43.)  At a minimum, the jury could have concluded that Petitioner intended, or knew that Murray intended, to do something in wanton and wilful disregard of the likelihood that the natural tendency of his behavior was to cause death or great bodily harm.  In the prosecutor's words,

> when you drive someone who is being assaulted who is in a fight with someone else over to a dark and deserted alley, you are knowingly creating a risk of death or great bodily harm, knowing that death or great bodily harm is the likely result of your action.

(*Id*. at 168.)

A rational trier of fact could have concluded from the evidence taken in the light most favorable to the prosecution that Petitioner aided and abetted Murray in killing the victim with malice and without justification or excuse.  Therefore, the evidence was sufficient to support Petitioner's conviction.  Furthermore, as noted above, both the jury's verdict and the state appellate court's decision are entitled to deference.  *Johnson*, 132 S. Ct. at 2062.  The Court therefore declines to grant relief on Petitioner's challenge to the sufficiency of the evidence.

**B.  The Sentence**

The second habeas claim challenges Petitioner's sentence.  Petitioner was charged with being a habitual offender, fourth offense, due to having three prior felony convictions.  He claims that two of the three prior convictions which the trial court relied on are invalid and, therefore, he was sentenced on the basis of inaccurate information.

A sentence violates due process if it is based on "misinformation of constitutional magnitude," *United States v. Tucker*, 404 U.S. 443, 447 (1972), or on "extensively and materially false" information which the defendant had no opportunity to correct through counsel, *Townsend v. Burke*, 334 U.S. 736, 741 (1948).  One of Petitioner's prior convictions was a Wayne County conviction for carrying a concealed weapon (CCW) on June 3, 2005.  Petitioner claims that he was confined in the Denver (Colorado) County Jail at the time.   A second conviction relied on by the trial court was possession of cocaine in Wayne County on or about March 8, 1994.  Petitioner maintains that this charge was reduced to a misdemeanor on March 25, 1994, and that he was sentenced to five years on probation.

The trial court, however, stated at Petitioner's sentencing that Petitioner had been convicted of *at least* four other offenses.  (Sentence Tr., at 19, Feb. 16, 2010) (emphasis added).  Defense counsel agreed that there were at least three or four prior convictions. (*Id*. at 7).  Defense counsel also stated that he had reviewed Petitioner's prior convictions with him and that Petitioner had acknowledged the convictions.  (*Id*. at 5, 18.)

Furthermore, when Petitioner raised his sentencing claim in his motion for relief from judgment, the trial court noted that, under Mich. Comp. Laws § 769.12, any

combination of three or more felonies or attempts to commit felonies can be used to sentence a defendant as a fourth felony offender. The court concluded that Petitioner was subject to the penalty for fourth habitual offenders.

Even if Petitioner's allegations about the CCW and cocaine convictions are true, it appears from the record, as summarized in the preceding two paragraphs, that he still had a sufficient number of prior convictions to qualify as a habitual offender, fourth offense. Moreover, this is not a case where the defendant was sentenced on the basis of information that he had no opportunity to correct through the assistance of counsel. *Cf. Townsend*, 334 U.S. at 740-41. Thus, the state court's rejection of Petitioner's claim was not contrary to, or an unreasonable application of, Supreme Court precedent, and Petitioner is not entitled to relief on the basis of his sentencing claim.

## C.  The Prosecutor

The third habeas claim alleges prosecutorial misconduct. Petitioner claims that the prosecutor violated his right to a fair trial and his right to due process of law by misleading the jury and perverting the facts during closing arguments. Petitioner blames the prosecutor for focusing on the victim, rather than the evidence.

### 1.  Clearly Established Federal Law

No state court addressed Petitioner's claim in a reasoned opinion. Nevertheless, claims of prosecutorial misconduct are reviewed deferentially in a habeas corpus proceeding. *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

"The relevant question is whether the prosecutor['s] comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)).

"In deciding whether prosecutorial misconduct mandates that habeas relief be granted, the Court must apply the harmless error standard." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997).  "[T]he standard for determining whether habeas relief must be granted is whether the . . . error 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

### 2.  Application

Petitioner asserts that the prosecutor committed multiple errors during closing arguments.  The alleged errors consist of the prosecutor's comments that:  Petitioner and his accomplice murdered the victim; it took two people to drag the victim to the place where she was found; one person in the van controlled the victim, and the other person drove the van; Petitioner said that he heard Murray and the victim fighting; Petitioner told Murray to search and assault the victim; Petitioner said that he heard the victim getting loud and saying she did not do anything; Petitioner stood by while Murray attacked the victim and got rid of her body; Petitioner admitted that the knife came from his van; Petitioner knew where the weapons were in his van; there was no reason to go to the alley other than to continue the assault; Petitioner said Murray told him to drive there; and Petitioner "told us they did this."  (Trial Tr. Vol. II at 154-61, 167-71, Jan. 27, 2010.)

13

Petitioner contends that these comments were misleading, perversions of the facts, and lies. According to him, the evidence established that: Murray, not him, committed the murder; he suggested that Murray search, not assault, the victim; there was no assault in the van, and the victim was not controlled; he did not tell the police that the victim got loud or angry or that he heard Murray and the victim arguing and fighting; he did not get out of the van; he told the police that the knife *may* have come from his van; and he did not tell the police that he and Murray committed the crime.

While is it true that prosecutors may not misrepresent the facts in evidence or assert facts that were never admitted in evidence, *Washington v. Hofbauer*, 228 F.3d 689, 700 (6th Cir. 2000), they are allowed to argue reasonable inferences from the evidence. *Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (quoting *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000)). The prosecutor's comments in this case were reasonable inferences from the evidence and, therefore, proper.

Even if the prosecutor's comments were deemed improper, she informed the jurors that they were not required to adopt what she thought were reasonable inferences. (Trial Tr. Vol. II at 155, Jan. 27, 2010.) Additionally, the trial court instructed the jurors at the beginning of the case, immediately before closing arguments, and during its charge to the jury that the attorneys' comments were not evidence. (Trial Tr. Vol. I at 97, 99, Jan. 26, 2010; Trial Tr. Vol. II at 153, 174, Jan. 27, 2010). The court explained that the attorneys' arguments were only meant to help the jurors understand the evidence and each side's legal theories. (Trial Tr. Vol. II at 174, Jan. 27, 2010.) The trial court also charged the

jurors to rely on their collective memories if the attorneys said something about the testimony that differed from what they recalled. (*Id*. at 153).

"[J]uries are presumed to follow their instructions." *Richardson v. Marsh*, 481 U.S. 200, 211 (1987). Therefore, the claimed errors could not have had a "substantial and injurious effect or influence" on the jury's verdict and were harmless. *Brecht*, 507 U.S. at 623. Petitioner is not entitled to relief on his prosecutorial-misconduct claim.

## D. New Evidence

Murray told the police about a month after the crime that Petitioner stabbed and killed the victim. (Prelim. Examination Tr. Vol. I at 27, 42-49, Sept. 1, 2009.) Although Murray did not testify at Petitioner's trial and his statement was not read to Petitioner's jury, Petitioner claims that he is entitled to a new trial because Murray has recanted his statement to the police.

In a notarized statement written about a month after Petitioner's conviction, Murray states that Petitioner is innocent of the murder, that Petitioner never got out of the van when they went to the alley, and that Petitioner should be released because he was charged with a murder that he did not commit. *See* Petitioner's Reply Brief in Support of Pet. for Habeas Corpus, ECF No. 12, Pg ID 920. In another statement, which is unsigned and not notarized, Murray wrote that Petitioner did not participate in the murder, that Petitioner is innocent of the murder, and that Murray "put the wrap" on Petitioner because Petitioner wrote a statement implicating Murray and because he (Murray) was scared and faced having his life taken away from him. (*Id*., Pg ID 921.)

Reasonable jurors "could question the credibility of this about face from another inmate and rationally could discount his testimony as nothing more than an attempt to keep from being 'pegged as a rat' for having originally identified [Petitioner] as the [murderer]." *McCray v. Vasbinder*, 499 F.3d 568, 574 (6th Cir. 2007). Thus, Murray's recanting affidavit must be viewed with extreme suspicion. *United States v. Chambers*, 944 F.2d 1253, 1264 (6th Cir. 1991). The state trial court, in fact, determined on review of Petitioner's claim that nothing in Murray's affidavit supported the evidence in this case.

Furthermore, Petitioner's claim of innocence based on newly-discovered evidence is not "a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). The Court therefore declines to grant habeas relief on the basis of Murray's post-trial statements.

## E.  Trial Counsel

The fifth habeas claim alleges ineffective assistance of trial counsel. Petitioner appears to be raising several claims about his trial attorney. On direct appeal, Petitioner argued that trial counsel was ineffective for failing to (1) point out a discrepancy in a detective's testimony, (2) investigate whether the police acted in bad faith when they searched for the knife used in the murder, and (3) request a jury instruction on accessory after the fact. The Michigan Court of Appeals concluded on review of these claims that trial counsel's performance did not fall below an objective standard of reasonableness and that Petitioner was not prejudiced by counsel's assistance.

In his habeas petition, Petitioner raises an additional claim about trial counsel. He contends that trial counsel should have called Murray as a rebuttal witness to determine whether Murray was promised anything or was ready to tell the truth. Finally, in his reply to Respondent's answer to the complaint, Plaintiff alleges that trial counsel failed to investigate and contact defense witnesses who had first-hand knowledge of the event for which Petitioner was charged and convicted. No state court addressed these issues in a reasoned opinion.

### 1. Clearly Established Federal Law

A defense attorney is constitutionally ineffective if counsel's "performance was deficient" and "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The "deficient performance" prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689.

The "prejudice" prong of the *Strickland* test "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. The defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,'" but "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 111-12 (quoting *Strickland*, 466 U.S. at 693).

17

Review under AEDPA, moreover, is "doubly deferential" when the claim at issue is ineffective assistance of counsel,

> because counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *Burt v. Titlow*, 571 U.S. ——, ——, 134 S.Ct. 10, 17, 187 L.Ed.2d 348 (2013) (quoting *Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); internal quotation marks omitted). In such circumstances, federal courts are to afford "both the state court and the defense attorney the benefit of the doubt." *Burt, supra*, at ——, 134 S. Ct., at 13.

*Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (*per curiam*).

### 2. Application

#### a. Failure to Investigate

Petitioner asserted on appeal that trial counsel should have investigated whether the police questioned and released him two times before arresting him. Petitioner claimed that, if trial counsel had investigated this issue, he could have raised doubt about a detective's testimony at trial that Petitioner was stopped only one time.

Petitioner also argued on appeal that trial counsel was ineffective for failing to investigate efforts made by the police to locate the knife used in the assault on the victim. Petitioner claimed that he took Detective Paul Thomas to the field where Murray threw the knife and that Detective Thomas could have exited the vehicle and acquired the weapon. Petitioner also challenged Detective Lorenzo Veal's testimony at trial that the lot was a big back yard with garbage in it. Petitioner asserted that the lot was not a big back yard and that there was only grass in the lot.

Defense attorneys have a duty "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. Nevertheless, as the Michigan Court of Appeals pointed out on direct appeal, Petitioner has failed to show

> what evidence, if any, trial counsel's investigation into whether the police initiated two traffic stops on defendant, as opposed to one, would have uncovered to support his defense. He also fails to provide an explanation of the significance or potential prejudice arising from trial counsel's neglect to further investigate the effort made by the police to find the knife.

*Sheffield*, 2011 WL 2623383, at *4. The Court of Appeals went on to point out that

> the record does not reveal that trial counsel was unprepared. Trial counsel adequately cross-examined Detective Veal and elicited testimony regarding the effort made by the police to recover the knife. Detective Veal stated that he and other police officers returned to the field, a large area with overgrown foliage covered with garbage, and were unable to find the knife. There was no indication from the record that trial counsel lacked preparation or familiarity with the case.

*Id*.

Because Petitioner failed to show any prejudice from trial counsel's omissions, the Court of Appeals concluded that Petitioner failed to substantiate his ineffective-assistance-of-counsel claim. This Court agrees with the Michigan Court of Appeals that trial counsel's alleged failure to investigate did not fall below an objective standard of reasonableness. Nor did counsel's performance prejudice Petitioner.

### b. Failure to Request a Jury Instruction

The other ineffectiveness issue that Petitioner raised on appeal was whether trial counsel should have requested a jury instruction on accessory after the fact. The Michigan Court of Appeals found no merit in this claim because Petitioner's defense

theory was that he had nothing to do with the crime, and an instruction on accessory after the fact would have undermined this theory because it would have implied that Petitioner was involved in the crime.  *See id*. at *5.

Petitioner's own admissions to the police, moreover, established that he assisted Murray before the crime by suggesting that Murray search the victim and by taking Murray and the victim to a secluded area where Murray could assault the victim without being seen.  The Court therefore concludes that trial counsel was not ineffective for failing to request a jury instruction on accessory after the fact.  The state appellate court's decision on this issue was objectively reasonable.

### c.  Failure to Call Witnesses

Petitioner's remaining claims likewise lack merit.  Although Petitioner claims that defense counsel should have called witnesses with first-hand knowledge of the crime, he has not named any witnesses, other than Murray, that his attorney could have called.  He admits that there were no eyewitnesses to the crime, and he has not stated what any defense witnesses would have said if they were willing and able to testify.

As for Murray, there is no reason to believe that he would have helped Petitioner's defense.  He told the police about a month after the crime that Petitioner killed the victim.  Although Murray subsequently signed an affidavit in which he claimed that Petitioner is innocent of the murder, it is unlikely that he would have testified at Petitioner's trial if he had been asked to do so, because he chose not to sign his affidavit until after Petitioner's trial.

The Court concludes for all the reasons given above that trial counsel's omissions did not constitute deficient performance, and Petitioner was not prejudiced by the claimed errors. Consequently, habeas relief is not warranted on Petitioner's claim about trial counsel.

## F.  Appellate Counsel

Petitioner alleges that his appellate attorney provided ineffective assistance by not investigating or protecting Petitioner's rights. More specifically, Petitioner claims that appellate counsel should have raised the issue of trial counsel's ineffectiveness, and he should have requested an evidentiary hearing on Petitioner's allegation of actual innocence. Petitioner contends that appellate counsel left out strong arguments and presented a "far-fetched" claim with little, if any, relevant arguments.

The Michigan Court of Appeals addressed Petitioner's claim on direct review and concluded that Petitioner had failed to establish ineffective assistance of appellate counsel. In reaching this conclusion, the Court of Appeals noted that Petitioner's claim about trial counsel lacked merit and that Petitioner was able to raise his other arguments in his *pro se* brief.

### 1.  Clearly Established Federal Law

An appellate attorney is not required to raise every non-frivolous claim requested by his or her client if counsel decides, as a matter of professional judgment, not to raise the claim. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

> In fact, the process of " 'winnowing out weaker arguments on appeal' " is "the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) (quoting *Barnes*, 463 U.S.

> at 751-52, 103 S.Ct. 3308).  "Generally, only when ignored issues are
> clearly stronger than those presented, will the presumption of effective
> assistance of counsel be overcome."  *Gray v. Greer*, 800 F.2d 644, 646 (7th
> Cir. 1986).

*Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).  To demonstrate that appellate

counsel was ineffective, a habeas petitioner must show (1) that his attorney acted

unreasonably in failing to discover and raise nonfrivolous issues on appeal and (2) there

is a reasonable probability that he would have prevailed on appeal if his attorney had

raised the issues.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citing *Strickland*, 466 U.S.

at 687-91, 694).

### 2. Application

In his *pro se* brief on appeal, Petitioner raised a sufficiency-of-the-evidence claim

similar to the claim that appellate counsel raised.  He has also raised that issue in two of

his habeas claims.  These facts undermine Petitioner's assertion that appellate counsel

raised a far-fetched claim on appeal.

The ignored issues, moreover, are not clearly stronger than the one counsel

presented on appeal.  Petitioner's claim about trial counsel lacks merit, and an attorney is

not ineffective for failing to raise a meritless claim.

Appellate counsel's failure to request an evidentiary hearing on Petitioner's claim

of actual innocence appears to have been a strategic decision, because counsel informed

Petitioner in a letter dated October 6, 2010, that newly-discovered evidence did not

necessarily entitle him to a new trial.  *See* Petitioner's Reply Brief in Support of Pet. for

Writ of Habeas Corpus, Ex. F, ECF No. 12, Pg ID 926.  Even if appellate counsel had

asserted a claim of actual innocence and requested an evidentiary hearing, it is unlikely that the case would have been remanded for an evidentiary hearing, because Murray's affidavit is not supported by the record.  Therefore, appellate counsel's performance did not prejudice the defense.

To summarize, Petitioner's underlying claims lack merit, and "by definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit." *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).  The Court therefore declines to grant relief on Petitioner's claim about appellate counsel.  The Michigan Court of Appeals reasonably concluded that appellate counsel was not ineffective.

## IV.  Conclusion

The state-court orders and opinions in this case did not result in decisions that were contrary to Supreme Court precedent, unreasonable applications of Supreme Court precedent, or unreasonable determinations of the facts.  The orders and opinion also were not "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement."  *Richter*, 562 U.S. at 103.  The Court therefore denies the petition for writ of habeas corpus.

## V.  Certificate of Appealability

Before Petitioner may appeal this Court's decision, a certificate of appealability must issue.  28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's

23

resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Reasonable jurists could not disagree with the Court's assessment of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further. The Court therefore declines to issue a certificate of appealability. Petitioner nevertheless may apply to the Court of Appeals for a certificate of appealability. He may proceed *in forma pauperis* on appeal, because he was granted *in forma pauperis* status in this Court and an appeal could be taken in good faith. Fed. R. App. P. 24(a)(3)(A).


                              S/Arthur J. Tarnow
                              Arthur J. Tarnow
                              Senior United States District Judge

Dated: October 3, 2016

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on October 3, 2016, by electronic and/or ordinary mail.

                              S/Catherine A. Pickles
                              Judicial Assistant